1998 OK 70

**BLACK HAWK OIL COMPANY, on its own behalf and as Class Representative, and Louis Dreyfus Natural Gas Corp., Petitioners–Appellees,**

v.

**EXXON CORPORATION, Exxon Company, U.S.A., Inc., Texaco, Inc., The J.A. LaFortune, Jr. Trust, Keener Oil Company, Amax Oil & Gas, Inc., Arco Oil & Gas Company, Daube Company, Enex Resources Corp., Henry H. Gungoll Associates, Marathon Oil Company, Mobile Oil Corporation, Union Pacific Resources Company, Shell California Prod. Inc., The W.O. Allen Estate, Walgreen Profit–Sharing, Charlotte Osborn Barrett, Betty Osborn Biedenhard, Carole J. Drake, Brenda Finnegan, Linda Gungoll, Thelma Jean Gungoll, V.H. Honeyman, James R. McEldowney, W.B. Osborn, Jr., W.C. Payne, John B. Williams, Victoria L. Lewis, The John Reneau Dowe Estate, Catherine A. Gungoll Trust I, Joe M. Coleman Family Trust, C.J. Sharp, C & L Processors Partnership, Hallwood Energy Corporation, Hallwood Petroleum, Inc. (formerly known as Quinoco Petroleum, Inc.), The V.H. Honeyman Estate, Ben F. Vaughan IV, a/k/a Ben F. Vaughn, Ben F. Vaughan III, individually and as Trustee a/k/a Ben F. Vaughn III, Genevieve Vaughan Residuary Trust a/k/a/ Genovieve F. Vaughan Residuary Trust, Ben F. Vaughan III, Trustee, Amelia Rossi–Landi Residuary Trust a/k/a/ Amelia R.E. Rossi–Landi Residuary Trust, BEA Rossi–Landi Residuary Trust a/k/a Beatrice C.V. Rossi–Landi Residuary Trust, Fidelia F. Rossi–Landi Residuary Trust, Fennegan Family Partnership, Marcus T. Barrett III a/k/a Marcus T. Barrett, William Osborn Barrett, Charlotte Osborn Barrett Trust, Catherine A. Moore a/k/a Catherine Moore, Emma Rossi–Landi Residuary Trust, Ben F. Vaughan III, Trustee, Vaughan Properties, Inc.,**

Texaco Exploration & Production, Inc., Enex Acquisition Corp., General Partner, Enex Resources Oil & Gas Co., W.H. Sherin & Son, Universal Resources Corp., and Oryx Energy Company, Defendants–Appellants,

and

Joy Warren Shannon, Myra B. Ward, Worrall Engineering, Inc., Aquila Energy Resources Corp. (formerly known as PSI Energy Resources, Inc.), The Heirs of the Estate of Joy Warren Shannon Being Kendall Warren, Stephanie J. Mosqueda and Jequita Napoli, as Personal Representative of the Margaret L. Blackburn Estate, Aquila Gas Processing Corporation, and Elieno South Texas Co., Defendants.

Nos. 88,868, 88,881.

Supreme Court of Oklahoma.

July 7, 1998.

As Amended on Denial of Rehearing Dec. 17, 1998.

E.W. Shaw, Philip J. Outhier, Mitchell & DeClerck, P.C., Enid, Oklahoma, and James M. Peters, Christopher J. Perry, Monnet, Hayes, Bullis, Thompson & Edwards, Oklahoma City, Oklahoma, for Defendant/Appellant, Oryx Energy Company.

Gary W. Davis, John J. Griffin, Jr., L. Mark Walker, Crowe & Dunlevy, Oklahoma City, Oklahoma, for Defendants/Appellants, Exxon Corporation, et al.

Stephen R. McNamara, Brian S. Gaskill, Brian T. Inbody, Sneed Lang, P.C., Tulsa, Oklahoma, for Plaintiffs/Appellees, Black Hawk Oil Company and Louis Dreyfus Natural Gas Corp.

## OPINION

WATT, Justice.

¶1 Although these cases began as separate actions, and generated separate appeals, they were consolidated both in the trial court and here. Consequently we will treat them as if only one case, and one appeal were before us.

¶2 Natural gas producers in Kingfisher County built the Dover–Hennessey Gas Products Plant in 1961 as a cooperative joint venture. The Plant was originally operated by Humble Oil Company, and later by Humble's successor, defendant Exxon. The Plant started buying gas from producers in 1962 and extracting from it liquid propane, butane, ethane, and natural gasoline. The agreements these producers made were memorialized in contracts that are at issue in this appeal.

¶3 In order to extract by-products that the Plant produced from the gas, the Plant operator was required to compress the gas it received. Temperature and pressure changes in the gas as it moves through gas transmission lines, create oil mixed with water, called scrubber oil or slop oil. Slop oil is collected in devices called drips and scrubbers that are installed in the transmission lines. The Plant operator regularly collected and sold the slop oil but kept the money realized from its sale without accounting for it to the gas producers.

¶4 On May 17, 1993, plaintiff, Black Hawk Oil Company, brought a class action suit for itself and others similarly situated against Exxon Corporation, Oryx Energy Company, and many others as defendants. Plaintiffs seek damages in both contract and tort for defendants' failure to pay for the slop oil the Plant operators collected. Louis Dreyfus Natural Gas Corporation later became a party plaintiff in the action. Plaintiffs claim that their contracts with defendants required defendants to pay for the slop oil. Plaintiffs also claim that defendants committed fraud by failing to account for the slop oil in the monthly statements of account defendants provided to plaintiffs and the other producers. Millions of dollars are at issue.

¶5 Black Hawk's predecessor in interest to the properties at issue here was Torch Energy Advisors, Inc., which is Black Hawk's parent corporation. Torch hired Petroleum Management Systems, Inc. to audit the Plant, and on August 23, 1989, Petroleum Management Systems issued an audit report that revealed, for the first time, that the Plant operators were not accounting to the producers for the proceeds from the sale of slop oil. In 1990, Torch transferred title to its subsidiary Black Hawk, and by October 1992 Black Hawk had sold all its interests in the properties at issue.

¶6 There are five basic forms of contract between producers and the Plant operators. There are minor variations in the language of the contracts but all use the term "plant products." All contracts were drafted by

Exxon's predecessor, Humble Oil and Refining, Inc. Only four of the five forms of contract are involved in this action.

¶ 7 The trial court held a hearing over the course of five days in early 1996 on the issue of whether a class should be certified in the case. The trial court entered its order certifying the class under 12 O.S.1991 § 2023 on January 8, 1997.[1] The trial court designated Black Hawk and Louis Dreyfus as

1. 12 O.S.1991 § 2023 provides:

A. PREREQUISITES TO A CLASS ACTION. One or more members of a class may sue or be sued as representative parties on behalf of all only if:

1. The class is so numerous that joinder of all members is impracticable;

2. There are questions of law or fact common to the class;

3. The claims or defenses of the representative parties are typical of the claims or defenses of the class; and

4. The representative parties will fairly and adequately protect the interests of the class.

B. CLASS ACTIONS MAINTAINABLE. An action may be maintained as a class action if the prerequisites of subsection A of this section are satisfied and in addition:

1. The prosecution of separate actions by or against individual members of the class would create a risk of:

   a. inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

   b. adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

2. The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

3. The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:

   a. the interest of members of the class in individually controlling the prosecution or defense of separate actions,

   b. the extent and nature of any litigation concerning the controversy already commenced by or against members of the class,

   c. the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and

   d. the difficulties likely to been countered in the management of a class action.

C. DETERMINATION BY ORDER WHETHER CLASS ACTION TO BE MAINTAINED; NOTICE; JUDGMENT; ACTIONS CONDUCTED PARTIALLY AS CLASS ACTIONS.

1. As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subsection may be conditional, and may be altered or amended before the decision on the merits.

2. In any class action maintained under paragraph 3 of subsection B of this section, the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that:

   a. the court will exclude him from the class if he so requests by a specified date,

   b. the judgment, whether favorable or not, will include all members who do not request exclusion, and

   c. any member who does not request exclusion may, if he desires, enter an appearance through his counsel.

Where the class contains more than five hundred (500) members who can be identified through reasonable effort, it shall not be necessary to direct individual notice to more than five hundred (500) members, but the members to whom individual notice is not directed shall be given notice in such manner as the court shall direct, which may include publishing notice in newspapers, magazines, trade journals or other publications, posting it in appropriate places, and taking other steps that are reasonably calculated to bring the notice to the attention of such members, provided that the cost of giving such notice shall be reasonable in view of the amounts that may be recovered by the class members who are being notified. Members to whom individual notice was not directed may request exclusion from the class at any time before the issue of liability is determined, and commencing an individual action before the issue of liability is determined shall be the equivalent of requesting exclusion from the class.

3. The judgment in an action maintained as a class action under paragraphs 1 or 2 of subsection B of this section, whether or not favorable to the class, shall include and describe those whom the court finds to be members of the class. The judgment in an action maintained as a class action under paragraph 3 of subsection B of this section, whether or not favorable to the class, shall include and specify or describe those to whom the notice provided in paragraph 2 of subsection C of this section was directed, and who have not requested exclusion, and whom the court finds to be members of the class.

4. When appropriate:

   a. an action may be brought or maintained as a class action with respect to particular issues, or

class representatives and certified the following class:

> All persons, whether natural persons, corporations, or other entities, who have sold natural gas either as casing head gas, gas well gas, or other hydrocarbons to defendant Exxon as the operator of the gas processing plant known as the Dover–Hennessey gas products plant in Kingfisher County, Oklahoma, pursuant to a "percent of proceeds" contract with Exxon or its predecessor. Class includes working interest owners and operators (such as Black Hawk). The class does not include those persons whose contracts with Exxon are well head purchase contracts.

¶ 8 The trial court's order was appealable by right under 12 O.S.1996 Supp. § 993.A.6.[2] Two appeals from the order were taken, one by Exxon and several other defendants, and the other by Oryx. We consolidated the two appeals by minute order dated February 14, 1997.

## ISSUE

¶ 9 The sole issue in this case is whether the trial court abused its discretion in certifying a class. We hold that the trial court did not abuse its discretion in certifying a class.

## DISCUSSION

### I. THE STANDARD OF REVIEW

■ ¶ 10 Where, as is the case here, the trial court has certified a class "it is clear that in order for appellant to succeed in [its] appeal it must demonstrate that the trial court abused its discretion in certifying [the] class action." *Shores v. First City Bank Corp.*, 1984 OK 67 ¶ 4, 689 P.2d 299, 301. Unless the record before us here indicates that the trial court has abused its discretion, we must affirm its decision to certify a class. Further, § 2023.C.1 gives the trial court flexibility and discretion to modify, or even to set aside, its order of certification if later developments demonstrate a need to do so. Thus,

> The pragmatically correct action, in the face of a close question as to certification, has been said to sustain certification because if it develops later during the course of the trial that the order is ill-advised, the order is always (prior to judgment on the merits,) subject to modification.

*Perry v. Meek*, 1980 OK 151 ¶ 19, 618 P.2d 934, 940.

### II. FINDINGS REQUIRED FOR CERTIFICATION OF A CLASS

■ ¶ 11 The requirements for certifying a class are set forth in § 2023, note 1, which

b. a class may be divided into subclasses and each subclass treated as a class. The provisions of this section shall then be construed and applied accordingly.
D. ORDERS IN CONDUCT OF ACTIONS. In the conduct of actions to which this section applies, the court may make appropriate orders:
1. Determining the course of proceedings or prescribing measures to prevent undue repetition or complication in the presentation of evidence or argument;
2. Requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action, or of the proposed extent of the judgment, or of the opportunity of members to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or otherwise to come into the action;
3. Imposing conditions on the representative parties or on intervenors;
4. Requiring that the pleadings be amended to eliminate therefrom allegations as to representa-

tion of absent persons, and that the action proceed accordingly; and
5. Dealing with similar procedural matters. The orders may be combined with an order under Section 16 of this act and may be altered or amended as may be desirable from time to time.
E. DISMISSAL OR COMPROMISE. A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs.

2. Title 12 O.S.1996 Supp. § 993 provides in material part:

A. When an order

...
6. Certifies or refuses to certify an action to be maintained as a class action ..., *the party aggrieved thereby may appeal the order to the Supreme court without awaiting the final determination in said cause*....

...

is identical to Rule 23 Federal Rules of Civil Procedure in all respects material to this appeal. We may look to federal authority in interpreting § 2023. *Shores,* 1984 OK at ¶ 5, 689 P.2d 299; *Matoon v. City of Norman,* 1981 OK 92 ¶ 8, 633 P.2d 735.

¶ 12 In order to maintain a class action, plaintiffs were required to demonstrate that the class met the four requirements set forth in Subsections 1 through 4 of § 2023.A, and one of three additional requirements contained in 2023.B. The trial court found that all requirements necessary to establish a right to the certification of a class were met.

¶ 13 Subsections 1 through 4 of § 2023.A, respectively, require (1) *numerosity,* i.e. the class is so numerous that the joinder of all members is impracticable; (2) *commonality,* i.e. there are questions of law or fact common to the class; (3) *typicality,* i.e. the claims or defenses of the class representatives are typical of the claims or defenses of the class; and (4) *representation,* i.e. the representative parties will fairly and adequately protect the interests of the parties. The trial court found that plaintiffs had satisfactorily demonstrated that all four requirements of § 2023.A had been met. The trial court also found that plaintiffs satisfied the alternative requirement under § 2023.B.3 of *predominance,* i.e. that the questions of law or fact common to the class predominated over any questions affecting only individual class members, and that a class action was superior to other methods of adjudicating the controversy.

*Numerosity*

¶ 14 Section 2023.A.1 requires plaintiffs to prove that "the class is so numerous that joinder of all members is impracticable." The trial court found, and the record supports, that the Plant operator, Exxon, sent gas statements to 168 producers in more than twenty states, and that there are approximately 646 contracts at issue. The trial court concluded "that it would be impracticable, if not impossible, to join all members of the proposed class" in the suit.

¶ 15 Exxon and Oryx claim that the trial court's finding concerning the number of parties in the class is "mere speculation," relying on *Marcial v. Coronet,* 880 F.2d 954 (7th Cir.1989). We disagree. The parties agree that the contracts at issue are unambiguous and that each contract falls, generally, into one of four contract types. In *Marcial* both the trial court and the court of appeals denied plaintiffs' motion for class certification. The thrust of plaintiffs' suit in *Marcial* was that the defendant insurance company had denied claims of its insureds, members of the class, solely because they had either refused to take, or failed, a lie detector test. The court concluded that the record did not support plaintiffs' claim that failure to take, or having failed, a lie detector test was necessarily the insurance company's basis for rejecting the claims.

¶ 16 *Marcial* presented a far different situation than is presented here, where all class members are parties to one of four form contracts. The class members rights will rise or fall on the interpretation of those contracts. There is nothing speculative about the identity of the parties to the contracts.

¶ 17 Exxon and Oryx complain about the inclusion in the class of producers who are also Plant owners. Even if the 63 Plant owners are excluded from the class, there are still nearly 200 class members. The numerosity test is satisfied by numbers alone when the size of the class is in the hundreds. *Newberg on Class Actions* (3d) § 3.05.

¶ 18 Oryx complains that some producers who took assignments of their rights from Plant owners do not have valid claims. This argument relates to the merits of the action, and inquiry into the merits is inappropriate when the court is deciding whether a class should be certified. *Eisen v. Carlisle and Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).

*Commonality, Typicality, and Predominance*

¶ 19 There is sufficient evidence in the record that there are common questions of law or fact, and that Black Hawk's and Louis Dreyfus's claims are typical of those of

the class as a whole to support the trial court's finding of commonality and typicality under § 2023.A, and of Predominance under § 2023.B.3. Oryx's argument to the contrary notwithstanding, the record supports the trial court's finding that the provisions of the contracts at issue dealing with accounting for payments to producers use virtually identical language. For example, Exxon, in a March 16, 1990 letter to other Plant owners, stated that under three of the four types of contracts at issue here "proceeds for scrubber oil should be allocated between the plant owners and buyers and the producers." The Exxon letter identified those contracts as "the typical lease casinghead gas contracts, gas well gas contracts, and gas processing agreements."

¶ 20  In the face of the Exxon letter, we find unconvincing Exxon's and Oryx's argument that small differences in the language of some of the contracts, would require interpreting each of the 600 plus contracts individually. Any differences in language among the contracts, or in their interpretation among the plaintiffs can be dealt with by the trial court when, and if, those differences present problems. At this juncture those differences have not been shown to create problems significant enough to deny class action status to this matter.

*Representation*

■  ¶ 21  Exxon and Oryx claim that neither Black Hawk nor Louis Dreyfus is a proper class representative because Black Hawk lacks "standing" to sue, and, according to defendants, neither Black Hawk nor Louis Dreyfus has a claim for fraud. We reject defendants' contention because the record amply supports the trial court's conclusion that Black Hawk and Louis Dreyfus could adequately represent the class. The trial court's failure to specifically address the "standing" argument does not constitute reversible error.

¶ 22  The Vice President and General Counsel of Torch Energy Advisor, Inc., Black Hawk's parent company, testified that Black Hawk would "fairly and adequately represent the class and look out for its interests." Torch has about 650 employees, and

manages oil properties valued at $1,200,000,-000.00.

¶ 23  the General Counsel of Louis Dreyfus testified that Louis Dreyfus was committed to pursuing the case "until it's resolved for the benefit of all the parties." Louis Dreyfus is a New York Stock Exchange company, and has total assets of $634,000,000.00.

■  ¶ 24  Exxon and Oryx claim that Black Hawk lacks "standing" to prosecute this action as a class representative because it assigned its rights to a successor. Black Hawk resists this claim on the ground that "standing" is a narrow doctrine that "pertains only to suits brought by individuals or groups challenging governmental action . . . ." *Federal Deposit Ins. Corp. v. Bachman,* 894 F.2d 1233, 1235 (10th Cir.1990). We agree that this is not a proper case for the application of the "standing" doctrine. The proper doctrine to have been advanced would have been "real party in interest." We decline to apply the "standing" doctrine because "Using the term 'standing' to designate real-party-in-interest issues tempts courts to apply standing principles outside the context in which they were developed." *Bachman,* 894 F.2d at 1235. A defendant is entitled to have the suit against him prosecuted by the "real party in interest" but "his concern ends when a judgment for or against the nominal plaintiff would protect defendant from any action on same demand by another." *Oklahoma Wildlife Federation v. Nigh,* 1972 OK 144 ¶ 23, 513 P.2d 310. Neither Exxon nor Oryx claims that any judgment against them here might not protect them from further liability to others arising out of the same acts.

¶ 25  Exxon and Oryx rely on *Kauffman v. Dreyfus Fund, Inc.,* 434 F.2d 727 (3d Cir.1970) to support their claim that a class should not be certified because Black Hawk lacks "standing." We do not believe that *Kauffman* supports their claim. The *Kauffman* court held that a class would not be certified in a suit against 65 separate mutual fund defendants because plaintiffs who sued derivatively as shareholders of four of the defendant funds had no cause of action against the remaining 61 defendants.

¶ 26 In *Alaniz v. California Processors, Inc.*, .73 F.R.D. 269 (N.D.Cal.1976) the court distinguished *Kauffman.* In *Alaniz,* female and minority members of a union had sued their unions and employers for employment discrimination, and sought to have a class certified. The court certified the class, and held that *Kauffman* did not apply because all of the defendants operated under a single, industry-wide, collective bargaining agreement, and, "the crux of this suit revolves around the operation of this agreement." The close relationship between the defendants and the labor agreements, held the court, prevented the fact that some of the plaintiffs did not belong to some of the local unions involved from defeating class certification.

¶ 27 Clearly, the *Kauffman* rule does not apply to this appeal. Here defendants' potential liability stems from four similar contracts, and statements of account rendered under the terms of those contracts. Thus, as in *Alaniz,* the crux of the suit revolves around the contracts. The record supports the trial court's finding that the representation requirement was met.

## III. DEFENDANTS' OTHER CONTENTIONS

¶ 28 Defendants' have briefed as separate propositions several issues in addition to those directed to the specific requirements of § 2023. We have disposed of most of defendants' arguments in Part II of this opinion and will deal with the balance of defendants' contentions here. In their briefs, defendants cite to nearly 50 authorities each. In order to keep this opinion to a manageable length we have chosen not to expressly address many of those authorities. To the extent we have decided not to address an individual authority, whether case, statute, or treatise, we have done so because we found it inapposite to the facts and issues before us here.

*Potential Weaknesses in Black Hawk's and Louis Dreyfus's Fraud Claims are not Grounds for Refusing to Certify a Class*

■ ¶ 29 Exxon claims that neither Black Hawk nor Louis Dreyfus has a claim for fraud because neither can prove that it relied on any misrepresentations made by defendants. Inability to prove reliance on defendants' misrepresentations may ultimately defeat Black Hawk's and Louis Dreyfus's claims but the mere possibility that their proof on this issue might fail is not grounds to deny certification of the class. "Defendants may raise non-reliance as an affirmative defense at trial.but it is inappropriate to raise non-reliance at the certification stage because entry into the intricacies of reliance goes to the merits of the case and cannot be considered by a court on a certification motion." *Gorsey v. I.M. Simon & Co., Inc.,* 121 F.R.D. 135, 138 (D.Mass.1988). Nevertheless, in order to establish causes of action for fraud, at trial plaintiffs must prove all elements necessary to prove fraud, including their reliance on defendants' representations. *Silver v. Slusher,* 1988 OK 53, 770 P.2d 878, Note 8; *Whitson v. Oklahoma Farmers Union Mutual Ins. Co.,* 1995 OK 4 ¶ 5, 889 P.2d 285.

■ ¶ 30 We find defendants' reliance of *Bunch v. Kmart Corp.,* 1995 OK CIV APP 41, 898 P.2d 170 to be misplaced. In *Bunch* at ¶ 4 the Court of Civil Appeals reversed the trial court's order certifying a class "because there are not questions of law or fact common to the class." There, plaintiffs·claimed that Kmart representatives throughout the United States had orally misrepresented the need for automobile repairs to plaintiffs and others similarly situated. We are faced with clearly different and more uniform actions in the case at bar. Here, plaintiffs claim that defendants failed to account for slop oil in monthly accountings that defendants rendered to plaintiffs.and other members of the class, although defendants admittedly collected and sold the slop oil. "The need to show individual reliance has not precluded class treatment in cases where standardized written misrepresentations have been made to class members." *Newberg on Class Actions* (3d) § 22.49. This is the situation here. *Bunch* is, therefore, clearly distinguishable from the case at bar.

*Neither Black Hawk's Contract With Petroleum Management Systems, nor the Conduct of its Attorneys, nor the Conduct of Louis Dreyfus Presents Grounds for Reversing the Trial Court's Order Certifying a Class*

■ ¶ 31 Black Hawk is asserting claims on behalf of its former parent corpora-

tion, Black Hawk Holding Company, which was owned by Torch Energy Advisors, Inc. between 1984 and 1990. Black Hawk also asserts claims for several other entities. Black Hawk's claims on behalf of itself, and those whose interests it represents, cover the years 1984 through 1993. Although Black Hawk later sold its interests in the properties at issue here, it held title to the properties for a portion of the time period covered by the suit. At this stage of the proceedings, that is sufficient to support the trial court's order establishing a class.

¶ 32  Defendants claim that the existence of a contract between Black Hawk and Petroleum Management Systems, the company that conducted the audit that revealed the nonpayment to producers for slop oil, is sufficient grounds for reversal of the trial court's order certifying a class. Black Hawk's original contract with Petroleum Management Systems called for Petroleum Management Systems to be paid a percentage of all retroactive payments received as a result of its audit. Black Hawk was represented in its dealings with Petroleum Management Systems by the law firm of Sneed, Lang, Adams & Barnes. Sneed, Lang represents Black Hawk here.

¶ 33  Black Hawk and Petroleum Management Systems later modified their agreement so that Petroleum Management Systems waived its right to a percentage of the recovery and Black Hawk agreed to take the lead in filing this action and seeking the certification of a class. In the event of a judgment for plaintiffs, Black Hawk also agreed to seek from the court a fifteen per-cent fee from the judgment to be paid to Petroleum Management Systems.

¶ 34  We see nothing in Black Hawk's contract with Petroleum Management Systems, or in the fact that it was negotiated by. Sneed, Lang, to defeat class certification. Although Black Hawk agreed to seek class certification, and a fee for Petroleum Management Systems, both must be ordered by the court, and are clearly matters within the court's discretion. Defendants' claim that Black Hawk, and its attorneys, breached their fiduciary duties to the class by entering into the contract is unconvincing. By seek-

ing class certification, and prosecuting the suit on behalf of the class, Black Hawk is clearly acting for the class. There is no conflict there.

¶ 35  Whether Black Hawk's agreement to seek a fee for Petroleum Management Systems creates a conflict of interest between Black Hawk and the class is a problem that cannot arise until, and unless, a plaintiff's judgment is entered. Any conflict on this score is peripheral to the main issue of whether defendants should have to pay plaintiffs for the slop oil. Further, any conflict is only potential.

¶ 36  Louis Dreyfus is not a party to the Black Hawk–Petroleum Management Systems contract, and could, if it wished, resist Black Hawk's claim for a fee for Petroleum Management Systems. Such a disagreement between the class representatives, if it were to arise would not be grounds for denying class certification at this stage of the proceedings. See *Wilson v. Great American Industries*, 94 F.R.D. 570, 572–73 (N.D.N.Y. 1982) (disagreement among class members as to appropriate relief does not prevent certification at the liability stage); *Anderson v. Bank of the South, N.A.*, 118 F.R.D. 136, 149 (M.D.Fla.1987) and *Sheftelman v. Jones*, 667 F.Supp. 859, 865, (N.D.Ga.1987) (possible conflicts that can arise only after judgment will be ignored at the certification stage). The record does not support defendants' claim that the contract between Black Hawk and Petroleum Management Systems constitutes sufficient grounds to reverse the trial court's order certifying a class.

¶ 37  Exxon has filed a counterclaim against Louis Dreyfus for $25.00 because of Louis Dreyfus's use of $25.00 worth of natural gas while a well was being serviced for paraffin build-up.

> The mere existence of a counterclaim does not preclude class certification. Were it otherwise, every motion for class certification would be defeated simply by the vehicle of filing a counterclaim against the named plaintiffs.

*Heartland Communications, Inc. v. Sprint Corporation*, 161 F.R.D. 111, 116 (D.Kan. 1995). We hold that Exxon's counterclaim is

insufficient to defeat class certification. We do not believe that the existence of a counterclaim against Louis Dreyfus for $25.00 in damages could have much, if any, impact on Louis Dreyfus's motivation to fairly and vigorously represent the class in this multimillion dollar lawsuit.

### CONCLUSION

¶ 38 We find nothing in the record to convince us that the trial court abused its discretion in certifying a class here. The record supports the trial court's conclusion that Black Hawk and Louis Dreyfus will fully and effectively represent the interests of the class. The trial court is empowered under § 2023.C.1 to alter or amend its certification order should circumstances warrant. Because of the uniformity of the contracts and the close connection of those contracts to defendants' acts, about which plaintiffs complain, this case appears to be one where the certification of a class could result in a significant savings of judicial resources. We see no grounds for reversing the trial court's order certifying a class.

COURT OF CIVIL APPEALS' OPINION VACATED, TRIAL COURT'S ORDER CERTIFYING THE MATTER AS A CLASS ACTION AFFIRMED.

SUMMERS, V.C.J., and LAVENDER, OPALA, ALMA WILSON and WATT, JJ., concur.

KAUGER, C.J., and HODGES, SIMMS and HARGRAVE, JJ., concur in part, dissent in part.

