2000 OK CIV APP 72

Michael SIAS, Individually and as Representative of a Class of All Those Similarly Situated, Plaintiff/Appellant,

v.

EDGE COMMUNICATIONS, INC., a Maryland Corporation, Defendant/Appellee.

No. 93,028.

Court of Civil Appeals of Oklahoma, Division No. 1.

March 3, 2000.

Certiorari Denied May 9, 2000.

Gregg R. Renegar, Joan A. Renegar, Kornfeld, Franklin, Renegar & Randall, Oklahoma City, Oklahoma, For Plaintiff/Appellant.

William S. Leach, Michael F. Smith, Rhodes, Hieronymus, Jones, Tucker & Gable, P.L.L.C., Tulsa, Oklahoma, For Defendant/Appellee.

BUETTNER, Judge:

¶ 1 Plaintiff/Appellant Michael Sias, individually and as representative of a class of all those similarly situated (Sias or Class) appeals from the trial court's order denying class certification. Sias filed his class action suit alleging fraud, deceit and negligent misrepresentation regarding the amount charged on prepaid calling cards sold by Defendant/Appellee Edge Communications, Inc. (Edge). Because we find no abuse of discretion in the trial court's decision to deny class certification, we affirm.

¶ 2 Class actions are governed by *12 O.S. 1991 2023* (A) and (B). That section provides:

A. PREREQUISITES TO A CLASS ACTION. One or more members of a class may sue or be sued as representative parties on behalf of all only if:

1. The class is so numerous that joinder of all members is impracticable;

2. There are questions of law or fact common to the class;

3. The claims or defenses of the representative parties are typical of the claims or defenses of the class; and

4. The representative parties will fairly and adequately protect the interests of the class.

B. CLASS ACTIONS MAINTAINABLE. An action may be maintained as a class action if the prerequisites of subsection A of this section are satisfied and in addition:

1. The prosecution of separate actions by or against individual members of the class would create a risk of:

a. inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible

standards of conduct for the party opposing the class, or

b. adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests;

or

2. The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

3. The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:

a. the interest of members of the class in individually controlling the prosecution or defense of separate actions,

b. the extent and nature of any litigation concerning the controversy already commenced by or against members of the class,

c. the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and

d. the difficulties likely to be encountered in the management of a class action.

\* \* \*

According to the statute, a class action may be maintained if all of the prerequisites of § 2023(A) are met along with one of the prerequisites listed under § 2023(B). In addition to all four of the § 2023(A) prerequisites, Sias argues that § 2023(B)(3) has been met in the instant case.

¶ 3 In his petition, Sias sought certification of a class defined as:

All persons and entities in the continental United States who have purchased long distance telephone calling cards issued by Edge Communications, Inc.

Sias further alleged that the class includes over 1000 members so that joinder is impracticable, that the class members have common issues of law and fact, and that Sias would fairly and adequately represent the class members. The basis of Sias's claim is his assertion that Edge, a Maryland corporation, sold prepaid calling cards falsely advertising a rate of 19 cents per minute which he and class members relied on to their detriment. Sias claimed that the calling cards failed to mention either that the minutes are rounded up or that interconnect fees or access fees would be charged against the card, resulting in a higher per minute charge. Sias asserted causes of action for fraud and deceit as well as negligent misrepresentation.

¶ 4 Edge responded with a denial of all of Sias's allegations. Edge later filed its motion to strike class action allegations. Edge asserted that it had sold more than 4.5 million prepaid calling cards during the preceding four years. Edge further asserted that the cards it sold had more than 10 designs, came in denominations of $5.00, $10.00, $20.00, $25.00 and $50.00, and that the point of sale materials for the cards vary significantly throughout the country. Edge next averred that it had no way of identifying the purchasers of the calling cards. Rather, each prepaid calling card included a code which the user entered on the phone to access the prepaid calling time.

¶ 5 In its motion to strike class action allegations, Edge asserted 1) that the proposed class does not satisfy the predominance requirement of § 2023(B)(3) because each class member would have to prove reliance on the alleged misrepresentation and because the case would require the application of differing state laws to class members from other states, 2) that the class does not meet the superiority requirement of § 2023(B)(3) because the amount of recovery would be consumed by the cost of notice to such a large class and because the primary beneficiaries of the action would be counsel for the class, 3) that a class action would be unmanageable because the proposed class members could only be identified through evidentiary hearings to determine if each had purchased a card issued by Edge, and 4) that Sias's action does not satisfy the representa-

tiveness prerequisite of § 2023(A)(4) because, Edge alleged, Sias's potential recovery is so small that Sias would not have an incentive to monitor the litigation in order to represent the class's interests.

¶ 6 In its order denying class certification, the trial court held that the numerosity prerequisite, § 2023(A)(1), was met based on its finding that even if only 10% of the 4.5 million card purchasers participated, the class would include 450,000 members. The court expressly held that it did not decide the issues of commonality, § 2023(A)(2), typicality, § 2023(A)(3), or representativeness, § 2023(A)(4). The court held, however, that a class action would not be the superior method of adjudicating Sias's claims because the costs of administering such a large class action would greatly exceed any potential recovery. The trial court further held that the task of administering the class and identifying class members would overwhelm the court. Finally, the court held that due process concerns exist with bringing a class action involving residents of other states being bound by a judgment made under Oklahoma law. The court concluded that Sias's proposed class action does not satisfy the superiority requirement of § 2023(B)(3).

¶ 7 We review an order denying class certification for an abuse of the trial court's discretion. *Shores v. First City Bank Corp.*, 1984 OK 67, 689 P.2d 299, 301; *Bunch v. KMart Corp.*, 1995 OK CIV APP 41, 898 P.2d 170, 171. Denial of class certification is appropriate where any of the five prerequisites for certification, found in § 2023(A) and (B), is absent. *Mattoon v. City of Norman*, 1981 OK 92, 633 P.2d 735, 736. Because of the similarity between § 2023 and Rule 23 of the Federal Rules of Civil Procedure, we may look to federal authority for interpretation of the § 2023 requirements for class certification. *Id.* at 737. The party seeking class certification bears the burden of proving that each of the requirements for a class action are clearly met. *Rex v. Owens ex rel. State of Oklahoma*, 585 F.2d 432, 435 (10th Cir.1978).

¶ 8 In the instant case, the trial court based its denial on its finding that a class action is not the superior method of adjudi-cating Sias's claim. The court also found problems with applying Oklahoma law to residents of other states. In effect, this is a finding that common issues of law do not predominate over other issues. We therefore review only the trial court's determination of these issues, the requirements of § 2023(B)(3) (predominance and superiority), because their absence would justify denial of class certification, and because the trial court did not rule on the prerequisites of § 2023(A), except for the numerosity requirement which Sias does not appeal.

¶ 9 On appeal, Sias argues that the trial court's finding that a class action is not the superior method of adjudicating his case constitutes an abuse of discretion. Sias asserts that the benefits of classwide resolution of common issues outweigh any difficulties which may arise in the management of the class, citing *Tana Oil and Gas Corporation v. Bates*, 978 S.W.2d 735 (Tex.App.1998). Sias further asserts that the trial court failed to realize that a class action is the "only" manner in which members of the class could seek redress.

¶ 10 Conversely, Edge presented evidence of the difficulty in managing such a large class action. The difficulty in managing a class action is a factor to be considered in determining whether a class action is the superior method of adjudication. *12 O.S. 1991 2023* (B)(3)(d). The evidence in the instant case indicated that Edge had sold 4.5 million prepaid calling cards, with the sales occurring in every state. The trial court noted that even if only 10% of those purchasing cards elected to participate, the class would include 450,000 members. The evidence also indicated that Edge produced several different designs of calling cards and that purchasers generally would discard the card after use. Therefore, it would be very difficult for the trial court to identify class members. We find that these management problems support the trial court's discretionary finding that a class action would not be the superior method of adjudicating the claims.

¶ 11 Sias next asserts that the trial court abused its discretion in denying class

certification "because the claims of class members are small." Sias correctly asserts that one of the policy goals behind class action statutes is to protect litigants whose claims are too small to proceed individually, citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985); *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980); *West Virginia v. Charles Pfizer & Company*, 440 F.2d 1079 (2nd Cir. 1971). However, we note that in its order, the trial court found that the costs of administering the case would greatly exceed any recovery. This finding is not synonymous with a denial because the claims are small. Rather, it appears the trial court found that because of the overwhelming expense of administering such a large class, a class action would not be the superior method of adjudicating the matter. We do not find an abuse of discretion in the court's decision in this regard.

■ ¶ 12 In a related assertion of error, Sias argues that the trial court incorrectly determined that the costs of the litigation would exceed any recovery. Sias bases this argument on his statement that he would bear the expense of affording publication notice to potential class members. We disagree with Sias's reading of the notice provision, however. Section 2023(C) provides for the notice to be afforded members of a class:

C. DETERMINATION BY ORDER WHETHER CLASS ACTION TO BE MAINTAINED; NOTICE; JUDGMENT; ACTIONS CONDUCTED PARTIALLY AS CLASS ACTIONS.

1. As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subsection may be conditional, and may be altered or amended before the decision on the merits.

2. *In any class action maintained under paragraph 3 of subsection B of this section, the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.* The notice shall advise each member that:

a. the court will exclude him from the class if he so requests by a specified date,

b. the judgment, whether favorable or not, will include all members who do not request exclusion, and

c. any member who does not request exclusion may, if he desires, enter an appearance through his counsel.

*Where the class contains more than five hundred (500) members who can be identified through reasonable effort, it shall not be necessary to direct individual notice to more than five hundred (500) members,* but the members to whom individual notice is not directed shall be given notice in such manner as the court shall direct, which may include publishing notice in newspapers, magazines, trade journals or other publications, posting it in appropriate places, and taking other steps that are reasonably calculated to bring the notice to the attention of such members, provided that the cost of giving such notice shall be reasonable in view of the amounts that may be recovered by the class members who are being notified. Members to whom individual notice was not directed may request exclusion from the class at any time before the issue of liability is determined, and commencing an individual action before the issue of liability is determined shall be the equivalent of requesting exclusion from the class. (Emphasis supplied).
* * *

Sias asserts that the cost of administering the class would simply be the expense of providing publication notice in major newspapers across the country. However, § 2023(C) provides for publication notice where the class contains more than 500 members who can be identified through reasonable efforts. No evidence in the record indicates that any members, beyond Sias, can be identified through reasonable efforts. Instead, the evidence indicates that potential class members likely do not possess any proof of their qualification as class members because the cards are intended to be discarded. Nor is there evidence that Edge can identify potential class members with reason-

able efforts. According to § 2023(C), individual notice must first be sent to 500 identifiable members. Even if we were to agree with Sias that he would bear the expense only of publication notice, that fact does not require reversal in light of the other factors bearing on the superiority requirement.

¶ 13 Additionally, it is evident the trial court was persuaded by Edge's evidence that identification of class members would be unduly burdensome on the court. Although there is no explicit requirement concerning the class definition in Rule 23, Fed.R.Civ.P. courts have held that the class must be adequately defined and clearly ascertainable before a class action may proceed. *Harris v. General Dev. Corp.*, 127 F.R.D. 655, 658 (N.D.Ill.1989). An identifiable class exists if its members can be ascertained by reference to objective criteria, but not if membership is contingent on the prospective member's state of mind. *Gomez v. Illinois State Bd. of Education*, 117 F.R.D. 394, 397 (N.D.Ill. 1987). The class represented must be ascertainable since the outcome of the class action is res judicata as to all unnamed class members. *Harris*, 127 F.R.D. at 658. In *Harris* the court noted that identification of class members would entail individual adjudications and determined that the class definition was overly imprecise and speculative. *Id.* See also *Luedke v. Delta Airlines, Inc.*, 155 B.R. 327 (S.D.N.Y.1993) ("A 'basic requirement' of a class action under Rule 23 is that class membership must be 'capable of ascertainment under some objective standard.' ").

¶ 14 Sias next asserts error in the decision that identification of the class members would overwhelm the court. In this proposition, Sias again focuses on notice. However, the evidence presented by Edge indicated that, after notice, the actual identification of class members would be difficult because Edge has no means of identifying purchasers of its calling cards and generally card users discard the cards after use so that potential class members would have a difficult time proving class status. Edge asserted that these circumstances would result in the court being required to hold evidentiary hearings to determine whether potential class members qualified for class membership. As not-

ed above, a class must be reasonably identifiable. We find no abuse of discretion in the trial court's determination that identification of class members would be unduly burdensome to the court.

¶ 15 Sias further agues that the trial court abused its discretion in noting it had due process concerns. Sias argues that the trial court should not have concerned itself with the impact of differing state laws because non-Oklahoma residents would have the opportunity to opt out of the class and thereby not be bound by the class judgment. However, with respect to those non-residents who did not opt out, the trial court would be faced with determining and applying the fraud laws of all 50 states. There is no argument that the law of Oklahoma should be applied to sales transactions in other states.

¶ 16 Sias further asserts that Edge may not raise the issue of conflicting state laws without providing proof of such differences. Edge asserted in its motion to strike class allegations that the elements of fraud differed from state to state and prevented the trial court from binding non-residents. Sias, who bears the burden of proof, has failed to offer any proof that other states' laws are in conformity with Oklahoma law on the elements of fraud. Further, the Oklahoma Supreme Court has held that a fraud case is not proper for a class action suit because of the individualized determination of reliance required to prove fraud. See *Bunch, supra*, 898 P.2d at 171–2.

¶ 17 In *Bunch*, the plaintiffs sought certification of a class of all those, in 49 states, who were damaged as a result of fraudulent and deceptive conduct related to automotive service and repairs at K–Mart. The trial court certified the class and K–Mart appealed. On appeal, this court held that because reliance must be proven for each individual class member, a common issue of fact did not predominate. This court further found that fraud claims must be decided using the law of the state which "has the most significant relationship to the occurrence and the parties." This court further noted that there are significant differences in the substantive law of fraud among the 49 states in which K–Mart operates. This court accordingly con-

cluded that a common issue of law did not predominate, and reversed and remanded the class certification order. 898 P.2d at 172. Furthermore, in a case involving residents of several states with differing negligence laws, it has been noted that the trial court would "face an impossible task of instructing a jury on the relevant law." *In re American Medical Systems, Inc.,* 75 F.3d 1069, 1085 (6th Cir.1996).

¶ 18 We find that the reasoning in *Bunch* applies here. The trial court correctly concluded that purported class members residing in other states could not be bound by a fraud action governed by Oklahoma law. Additionally, as noted in *Bunch,* the issue of reliance is an individual determination. Accordingly, common issues of law and fact do not predominate, making class certification improper under § 2023(B)(3). We note that *Black Hawk Oil Co. v. Exxon Corp, et al.,* 1998 OK 70, 969 P.2d 337 distinguishes *Bunch.* In *Black Hawk,* the plaintiffs relied on written misrepresentations made in monthly oil accountings. The court found no requirement to prove individual reliance where the misrepresentations were uniform. We are unable to extend that holding to the instant case because of the evidence that Edge sold prepaid calling cards with at least 20 different designs. Sias has not established that the different designs uniformly indicated a 19 cents a minute rate or failed to mention access and interconnect fees, or that the point of sale marketing was in other material respects uniform.

¶ 19 Sias next asserts that he has established a prima facie case for class certification. Sias asserts that the class action statutes are to be liberally construed, citing *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 563 (2nd Cir.1968). Sias further asserts that there is a presumption in favor of certification of class actions. For this argument, Sias relies on *Black Hawk,* 969 P.2d at 342, which provides " . . . in the face of a close question as to certification, has been to sustain certification because if it develops later during the course of the trial that the order is ill advised, the order is always (prior to judgment on the merits) subject to modification." However, in that case, the court was faced with determining whether the trial court abused its discretion in certifying a class. In the instant case, we must determine whether the trial court abused its discretion in denying class certification. We note the following determination made in a case similar to the one at bar:

> First, the size of the class was apt to be enormous even restricted to Illinois residents. Second, identification of the class was virtually impossible since there are no records upon which to rely. Third, the cost of administration is likely to be prohibitive when viewed against the basic suggested recovery of 30 cents per sandwich. Fourth, the variability of damages weighs against a class action in that defendants' franchises are located in different parts of the state and pay different amounts for their meat. The court further considered that even if a formula could be utilized to determine damages, the time-consuming nature and complications of these proofs seem insurmountable. There is no index, documents or other objective parameters for the damages so that each individual consumer would have to establish how many sandwiches he purchased and at what price. Finally, the trial court concluded that a class action would not be an appropriate method for the fair and efficient adjudication of this controversy because: (1) it would leave an open-ended, unidentifiable class; (2) administrative costs would consume de minimus recoveries; and (3) verification of claims defies proof and objective corroboration. . . . . Insubstantial recoveries by class members, high administrative costs in relation to aggregate recovery and difficulty in corroborating claims are valid considerations in determining whether a class action is manageable.

*Hayna v. Arby's, Inc.,* 99 Ill.App.3d 700, 55 Ill.Dec. 1, 425 N.E.2d 1174, 1183–4 (1981). *Arby's* involved a class action suit challenging the misrepresentation that imitation roast beef was real roast beef. In *Arby's,* claimants would have had a difficult time proving they purchased a sandwich from Arby's. In the instant case, claimants would have difficulty proving they purchased a calling card

from Edge and that they relied on the advertised per minute rate. Further, the amount of damages would vary according to the number of cards purchased, their denominations, and their usage in each calling transaction. The trial court's explanation for its denial is reasonable in light of the factors included in the § 2023(B)(3) prerequisite. The task of administering a nationwide class of hundreds of thousands of members would be overwhelming to the trial court, particularly in light of the required application of various states' laws and in light of the difficulty in identification of class members. We consequently find no abuse of discretion in denial of class certification.

¶20 AFFIRMED.

¶21 CARL B. JONES, P.J., and GARRETT, J., concur.