2004 OK CIV APP 25

Hilton and Ramona MELOT,
Plaintiffs/Appellees,

v.

OKLAHOMA FARM BUREAU MUTUAL
INSURANCE COMPANY,
Defendant/Appellant.

No. 98242.

Court of Civil Appeals of Oklahoma,
Division No. 4.

Dec. 9, 2003.

Reggie N. Whitten, Jason E. Roselius, Derrick L. Morton, Whitten, Nelson, McGuire, Wood, Terry, Roselius & Dittrich, Oklahoma City, OK and Terry W. West, Bradley C. West, The West Law Firm, Shawnee, OK and Michael W. Hinkle, Oklahoma City, OK, for Plaintiffs/Appellees Hilton and Ramona Melot.

Burck Bailey, Eric S. Eissenstat, Jay P. Walters, Fellers, Snider, Blankenship, Bailey & Tippens, Oklahoma City, OK, for Defendant/Appellant Oklahoma Farm Bureau Mutual Insurance Company.

Opinion by JERRY L. GOODMAN, Presiding Judge:

¶ 1 Defendant Oklahoma Farm Bureau Mutual Insurance Company (Insurer) appeals the trial court's order certifying a class action. Based upon our review of the facts and applicable law, we affirm.

## FACTS

¶ 2 Plaintiffs Hilton and Ramona Melot (Plaintiffs) are policyholders with Insurer. Plaintiffs asserted their home was damaged by a storm on June 9, 2000. They filed a claim with Insurer. After several inspections by Insurer's adjustor and negotiations between the parties, Insurer offered and Plaintiffs accepted $8,751 for the claim. According to Plaintiffs, this figure did not include a 20 percent "overhead and profit" allowance routinely charged by general contractors whenever three or more trades were involved in repairing damage to a home.

¶ 3 Plaintiffs then sued Insurer, asserting that Insurer had a common practice of underpaying its policyholders' property damage claims by failing to include this 20 percent allowance for overhead and profit. Plaintiffs asserted three theories of recovery: breach of contract, in that Insurer's common practice resulted in their receiving "less than full and fair indemnification"; bad faith, in that Insurer purposely followed this common practice of withholding the 20 percent, which was "at worst, an unlawful practice and, at best, extremely questionable"; and fraud, in that Insurer had failed to inform its insureds about the practice. Plaintiff's petition was filed individually and on behalf of others insured by Insurer "whose claims for covered damage to their dwellings were intentionally under-adjusted in that [Insurer] failed to include adequate and timely payments for contractor's profit and overhead."

¶ 4 In an order filed August 16, 2002, the trial court granted Plaintiffs' motion for class certification. The trial court found that Insurer did not inform Plaintiffs about the 20 percent figure nor did it offer any such allow-

ance. On October 31, 2002, the trial court modified the order to provide the following definition of the class:

> All Oklahoma citizens who were or are Oklahoma Farm Bureau Mutual Insurance Company homeowner policyholders:
>
> 1. who suffered a covered loss to their home on or after June 8, 1999;
>
> 2. whose losses were adjusted on an actual cash value (ACV) or replacement cost (RC) basis;
>
> 3. whose Oklahoma Farm Bureau worksheets/estimates indicate the involvement of three trades or more; and
>
> 4. whose damage adjustments did not include adequately calculated and timely tendered compensation for general contractor's overhead and profit.

¶ 5 Insurer appeals.

## STANDARD OF REVIEW

¶ 6 In an appeal from a trial court's certification of a class action, our standard of review is whether the trial court abused its discretion. *Shores v. First City Bank Corp.*, 1984 OK 67, ¶ 4, 689 P.2d 299, 301. Class actions in Oklahoma are governed by 12 O.S. 2001, § 2023. The trial court abuses its discretion if the record fails to support the conclusion that each of the five prerequisites of the statute are met. *Id.* These prerequisites are set out in section 2023 as follows:

> A. PREREQUISITES TO A CLASS ACTION. One or more members of a class may sue or be sued as representative parties on behalf of all only if:
>
> 1. The class is so numerous that joinder of all members is impracticable;
>
> 2. There are questions of law or fact common to the class;
>
> 3. The claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> 4. The representative parties will fairly and adequately protect the interests of the class.
>
> B. CLASS ACTIONS MAINTAINABLE. An action may be maintained as a class action if the prerequisites of subsec-

tion A of this section are satisfied and in addition:

> . . . .
>
> 3. The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:
>
> a. the interest of members of the class in individually controlling the prosecution or defense of separate actions,
>
> b. the extent and nature of any litigation concerning the controversy already commenced by or against members of the class,
>
> c. the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and
>
> d. the difficulties likely to be encountered in the management of a class action.

## ANALYSIS

¶ 7 The parties have chosen to combine some of the statute's elements for purposes of argument. In the interest of clarity, we will discuss them separately.

*Preliminary Matters*

¶ 8 First, we disagree with Insurer's assertion that the trial court failed to certify an identifiable class, or that it erred because it did not identify the class until it issued its amended order. The amended order is final and reviewable. It adequately specifies who is a putative member of the class. While this does not automatically mean the requirements of a class action were met, it is clear that the class is sufficiently identifiable.

¶ 9 We also reject Insurer's argument that the class is too broad in that the contractual claims are subject to a one-year statute of limitations, meaning that the class should be limited to those suffering a loss no later than June 8, 2000, and not June 8, 1999, as the order indicates. The existence of individual statute of limitations defenses is

not a factor that generally finds favor with courts considering certification. *Shores,* 1984 OK 67, ¶ 16, 689 P.2d at 304. The trial court can consider the matter as needed and limit the class in ways to conform to the statute of limitations, if it becomes necessary to do so. At this stage of the proceeding, the limitations issue is not a sufficient ground for denying certification.

### Numerosity

¶ 10 The trial court accepted the testimony of Plaintiff's expert that 6,900 to 7,000 potential class members exist. This requirement was uncontested by Insurer.

### Commonality

¶ 11 Commonality requires that there be questions of fact or law common to the class. The trial court concluded that a common question existed as to whether Insurer, in cases where it conceded that repairs involved three or more trades, was required to include an allowance for the general contractor's overhead and profit.

¶ 12 Insurer asserts that the trial court erred because individualized questions must be addressed concerning what is a "trade." While this might be better addressed as a predominance issue, the answer to this argument is that the trial court's class definition does not state that the class is composed of those with claims for repairs involving three or more trades, but rather those where *insurer's own worksheets* indicate the need for three or more trades. Under this definition, there would be no need for the trial court to make individualized determinations, because the determinations have already been made by Insurer. Also, it would be unnecessary for purposes of class certification analysis to consider which three trades were involved in any single claim. This is because Plaintiffs assert Insurer engaged in a certain actionable kind of conduct regardless of which trades were involved.

¶ 13 Insurer also asserts that inherent in Plaintiffs' tort claims are individualized issues of reliance, making a class action inappropriate. For example, in *Bunch v. KMART Corp.,* 1995 OK CIV APP 41, 898 P.2d 170, the plaintiffs sought to certify a nationwide class of customers who alleged fraud concerning charges for automotive parts and services at K–Mart locations throughout the country. The Court of Civil Appeals held that the plaintiffs could not satisfy the commonality prerequisite as to common questions of fact, because each plaintiff would be required to prove reliance.

¶ 14 However, *Bunch* has been distinguished by the Oklahoma Supreme Court in *Black Hawk Oil Co. v. Exxon Corp.,* 1998 OK 70, 969 P.2d 337. There, the defendants allegedly failed to account for slop oil in monthly accountings rendered to them by a specific class of oil producers. The court quoted *Newberg on Class Actions* for the principle that "[t]he need to show individualized reliance has not precluded class treatment in cases where standardized written misrepresentations have been made to class members." *Id.* at ¶ 30, 969 P.2d at 345.

¶ 15 In the instant case, while the alleged omissions of information may not have been written, they were standardized in that Plaintiffs have asserted that Insurer made the same omissions to all members of the class. Under this analysis, the commonality requirement has been met.

### Typicality

¶ 16 The trial court concluded this requirement was met because all the class members' claims were based on the same alleged conduct by Insurer through its failure to include the 20 percent charge in paying claims to its homeowners for property damage. The typicality requirement is satisfied "[w]hen it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented ... irrespective of varying fact patterns which underlie individual claims." *Ammons v. Am. Family Mut. Ins. Co.,* 897 P.2d 860, 863 (Colo.Ct.App.1995), quoting *Newberg on Class Actions.* Clearly, Plaintiffs' legal theories of recovery arise from allegations of a common course of deceptive conduct equally affecting themselves and the putative class members. This requirement is therefore met.

### Adequacy of Representation

¶ 17 Insurer asserts the two individual plaintiffs cannot adequately represent the class. Class representatives are required to have a "general understanding of their position as plaintiffs with respect to the cause of action and the alleged wrongdoing perpetrated against them by the defendants." *Kalodner v. Michaels Stores, Inc.*, 172 F.R.D. 200, 209 (N.D.Tex.1997). At the core of this case are basic assertions regarding insurance information and payments that did not fully satisfy homeowners' claims. The record does not indicate Plaintiffs lack personal knowledge of the underlying circumstances of the case or that they lack understanding of the basic, consumer-oriented issues involved. We reject Insurer's argument.

¶ 18 Insurer also asserts Plaintiffs' counsel faces a conflict of interest problem. Insurer points out that one of Plaintiffs' lawyers had served as Insurer's defense counsel, and that several of Plaintiffs' lawyers had a role in convincing Insurer to later begin including the 20 percent charge in settling claims. However, the record does not indicate Plaintiffs had any complaints about being represented by these lawyers. If Insurer felt a conflict of interest existed, it could have filed a motion to disqualify, but it did not do so. Furthermore, there is no assertion the attorneys are unqualified or inadequate. We find no error.

### Predominance

¶ 19 As a prerequisite to a class action, the predominance factor requires the trial court to examine whether individual questions preclude the common questions of law or fact from being predominate. *Mattoon v. City of Norman*, 1981 OK 92, ¶ 20, 633 P.2d 735, 739. In rendering its decision, the trial court found that Plaintiffs sought "to remedy a common legal grievance. The alleged breaches of contract and/or fraud are the same or similar acts or omissions for each Class Member and common questions predominate, even though damage amounts may vary."

¶ 20 The gravamen of Plaintiffs' lawsuit is that Insurer failed to inform and compensate them concerning a 20 percent charge a general contractor allegedly routinely includes, above and beyond the cost of labor and materials, for overhead and profit. The trial court's definition includes Oklahoma policyholders of Insurer who suffered a "covered" loss to their homes on or after June 8, 1999. Before any policy holder could join the class, he or she would therefore have to show the loss was covered. In the context of insurance, this would seem to necessitate individualized inquiries into the type of coverage each policyholder had and individualized determinations into whether a loss was covered. An insured's loss might be excluded under a particular policy, or because the loss failed to meet a particular deductible, or because the loss exceeded a particular limit of liability.

¶ 21 We do not view this as a problem here, however, because the class does not include all insureds with a claim, or even all those with an unresolved claim. It is limited to those with a "covered loss." The record indicates Insurer has *already determined* whether a loss was covered. This information is contained in its records for each claim. Therefore, there appears to be no need to determine individualized issues of coverage. Those whom Insurer has determined suffered a covered loss are included in the class. Those whose claims were rejected by Insurer are not included in the class. For the latter, individualized issues of coverage would exclude them from the class.

¶ 22 The trial court further defined the class as those whose damage adjustments by Insurer did not include "adequately calculated and timely tendered compensation" for general contractor's overhead and profit. The record discloses that Insurer's records reveal whether payments to an insured did or did not include the 20 percent. Those who were not paid that amount would be part of the class; those who were would not be in the class.

¶ 23 Again, on first blush, it would seem necessary to make individual inquiries—here, into what is "adequate." In this regard, Insurer asserts that determining whether damage adjustments were adequately calculated depends on individualized questions of

whether an insured was entitled to a payment for overhead and profit.

¶ 24 Significantly, Insurer never asserts—and the record does not indicate—that the question of whether the 20 percent charge should be included in settling a claim was resolved by Insurer after an individual assessment of each claim. To the contrary, Plaintiffs' theories of recovery are based on the concept that Insurer followed an across-the-board pattern of failing to pay the 20 percent when three or more trades were involved, and that they are entitled to knowledge of and compensation for the charge, regardless of whether the resulting repair costs included the 20 percent charge. This point is made clear by the following exchange during the class certification hearing between Plaintiffs' attorney and Insurer's vice president in claims:

Q. If Farm Bureau makes a decision that overhead and profit is a—is a proper part of the actual cash value adjustment and pays that and the insured says, "I can do better. I can get somebody to do it for ten," Farm Bureau is not going to ask for a refund of the difference, are they?

A. Not likely.

Q. And if the insured says, "I believe that I can do that work myself and I will just keep that allowance," Farm Bureau is not going to go back and say, "Since you did the work yourself, we want the money."

A. If that happened, we wouldn't go back to them for a refund.

¶ 25 We view the matter of whether Plaintiffs are entitled to the 20 percent charge as a question going to the merits of the lawsuit. Such an inquiry is inappropriate in deciding whether a class should be certified. *Lobo Exploration v. Amoco Prod. Co.*, 1999 OK CIV APP 112, ¶ 14, 991 P.2d 1048, 1054. Put another way, a court cannot deny certification based on a belief that a plaintiff cannot prevail on the merits. *Miller*

*v. Mackey Intern., Inc.*, 452 F.2d 424, 427 (5th Cir.1971).

¶ 26 Recently, in analyzing predominance and commonality, the Oklahoma Supreme Court quoted *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir.2001): "[W]here the lawsuit challenges a ... practice or policy that affects all of the putative class members ... individual factual differences among the individual litigants or groups of litigants will not preclude a finding of commonality." *Ysbrand v. DaimlerChrysler Corp.*, 2003 OK 17, ¶ 21, 81 P.3d 618. Under the facts of this case, we believe this requirement was met.

*Superiority*

¶ 27 Finally, Insurer asserts a class action is not superior to other available methods for the fair and efficient adjudication of the controversy. Insurer's argument is essentially a recasting of its previous arguments. The factors listed in the statute, when applied to the facts of the instant case, support the trial court's decision.

CONCLUSION

¶ 28 In affirming the trial court's decision, we express no opinion concerning whether what Insurer did—or in this case, did not do—amounted to breach of contract, bad faith, or fraud. We limit our decision to the issues before us, and hold that under the facts of this case, the trial court did not abuse it discretion in certifying a class action.

¶ 29 AFFIRMED.

REIF, J., and RAPP, J., concur.